(119 So. 861)

### CURTIS v. McLIN. (8 Div. 656.)

Court of Appeals of Alabama. Jan. 22, 1929.

Bradshaw & Barnett, of Florence, for appellant.

BRICKEN, P. J. This was a detinue suit by appellant against the appellee for a Ford coupé.

The evidence shows that the appellant owned the car in question in the summer of 1926; that he delivered this car and another Ford to the Bryan Motor Company under an agreement "that I was to transfer the title when he gave me title to the Oakland." It appears that one Harry J. Bryan represented the Bryan Motor Company, and that this company had a Pontiac and an Oakland automobile; that it delivered possession of the Pontiac to the appellant, who drove it about a month, using a dealer's tag on the car, which Bryan furnished; that they later delivered possession of the Oakland to appellant, and he drove this car about a month. It further appears that the Oakland car had been delivered to Harry Bryan under a trust receipt by the General Motors Acceptance Corporation, and that that company repossessed the Oakland car after it had been in possession of appellant for the time stated. Bryan Motor Company sold the two Fords to one Harold Beckham, and he claims, though the evidence on this point is conflicting, that appellant told him that he traded both of the Fords in on the Pontiac, and that appellant was standing at the door and that he was standing at the coupé, and that Bryan had the certificate of title, and that he gave it to Beckham at the time the transaction was closed. Beckham then sold the coupé in question to the Dowling Motor Company, and said company in turn sold it to McLin, probably two or three weeks after they acquired it.

Appellant's version is that Harry J. Bryan, representing the Bryan Motor Company, told him to go ahead and retain possession of the Pontiac car until the Oakland came, and that,

when the Oakland arrived, he would have the option of trading for either one of the two or not trade for either one of them, if he did not want to, and then, when the Oakland came, possession of it was delivered to him, and possession of the Ford cars delivered to the Bryan Motor Company, under the express agreement that he was to transfer title to the Ford coupé when he (Harry Bryan) could transfer title to the Oakland car to appellant. The only thing in the record that contradicts appellant's version of the transaction with the Bryan Motor Company is the testimony of the witness Beckham about a conversation with the appellant at the time Beckham claims to have bought the two Ford cars from the Bryan Motor Company, in which he says the appellant told him he had traded both of the Fords in on the Pontiac car.

Title to and possession of personal property are two separate and distinct propositions. One may be in possession of property without title, or he may have title without possession.

If it be true that the appellant delivered possession of his cars to the Bryan Motor Company under an agreement that he was to convey title to said cars to them in exchnge for title to the Oakland car, and that that company never conveyed title to the Oakland car to appellant, then, of course, title to the Ford coupé in question remained in appellant, and he was entitled to recover in this case. There was nothing offensive to the law in an agreement to exchange possession of the cars with an understanding that title thereto would be exchanged at some future date. The fact that the appellant surrendered possession of the Oakland car to the General Motors Acceptance Corporation rather corroborates his contention that his agreement with the Bryan Motor Company only embraced right to the possession of the car without any claim to title thereto. The fact that the trust receipt of the Acceptance Corporation was not recorded, as required by statute, did not operate to divest title in the Ford coupé out of appellant and invest it in the Bryan Motor Company, and, if appellant's version of the transaction with the Bryan Motor Company is true, he was an interested bailee in possession of the Oakland car awaiting the arrival of the time of the mutual exchange of titles to the respective cars between him and the Bryan Motor Company.

We are of the opinion that the trial court erred in giving the general affirmative charge requested in writing by the appellee. It was a jury question as to whether or not the Bryan Motor Company ever acquired any title to the Ford coupé in question. For that reason the judgment appealed from is reversed, and the cause remanded.

Reversed and remanded.